IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 24-cv-304-CNS (Bankr. No. 23-12820-MER)

In Re:

RUSSEL TUCKER,

    Debtor.

───────────────────────────────────────────

SIMON RODRIGUEZ, Chapter 7 Trustee,

    Appellant,

v.

RUSSEL TUCKER,

    Appellee.

───────────────────────────────────────────

## OPINION

───────────────────────────────────────────

Among the essential components of a bankruptcy debtor's meaningful fresh start are the exemptions permitted to debtors by law, which remove property from the bankruptcy estate (and thus from creditors). Exemptions, however, are not without limits. Both federal and state legislatures have decided the payment of child support takes precedence over the protection of debtors' assets and have given domestic support obligation creditors a green light to pursue exempt property.

Here, a chapter 7 debtor listed certain personal property as exempt on his bankruptcy schedules, and the trustee objected asserting the debtor was not entitled to Colorado exemptions pursuant to Colo. Rev. Stat. § 13-54-106 because of the existence

of a domestic support obligation claim. The Bankruptcy Court overruled the objection, concluding that such a claim does not invalidate a properly claimed exemption. In doing so, the Bankruptcy Court interpreted Colo. Rev. Stat. § 13-54-106 to require that exempt personal property remains liable for domestic support obligation debts, notwithstanding its exempt status. For the reasons that follow, the Court affirms the Bankruptcy Court's decision.

## I. BACKGROUND

On June 27, 2023, Appellee Russel E. Tucker (Debtor) filed a voluntary petition for chapter 7 bankruptcy relief. Debtor listed several assets on his Schedule A/B (the Assets) and claimed exemptions in the Assets on his Schedule C under Colorado law. The scheduled value of the Assets totaled $13,330. Debtor also listed on his Schedule E a priority unsecured claim owed to Leesa Tucker in the amount of $19,589 and indicated it was a "domestic support obligation" (DSO).

Shortly after, the chapter 7 Trustee (the Trustee) filed an *Objection by Trustee to Exemptions* (the Objection), asserting Debtor was not entitled to Colorado exemptions pursuant to 11 U.S.C. § 544(a)[1] and Colo. Rev. Stat. § 13-54-106 because he had a DSO claim. On September 11, 2023, the Bankruptcy Court held a preliminary hearing and took the matter under advisement. Shortly after that, on October 23, 2023, the Bankruptcy Court entered its *Order Denying the Trustee's Objection* (the Order Overruling Objection). The Bankruptcy Court held Debtor's exemptions were valid despite having a DSO debt because the Assets were properly exempted under Colorado law. The Bankruptcy Court

---

[1] Unless otherwise noted, all references to "Section," "§," "Bankruptcy Code," and "Code" refer to the U.S. Bankruptcy Code, 11 U.S.C. § 101, et seq., and all references to the "Rules" refer to the Federal Rules of Bankruptcy Procedure.

2

further held that neither the Code nor Colorado law requires a chapter 7 trustee to object to valid exemptions to otherwise preserve a DSO creditor's ability to pursue a debtor's exempt assets, during or after a case.

On November 6, 2023, the Trustee filed a *Motion to Reconsider Order Denying Trustee's Objection to Debtor's Exemptions* (the Reconsideration Motion). On January 17, 2024, the Bankruptcy Court entered its *Order Denying Trustee's Motion to Reconsider* (the Order Denying Reconsideration). On January 31, 2024, the Trustee appealed the Order Denying Objection and Order Denying Reconsideration.

## II.   JURISDICTION

This Court has jurisdiction to hear appeals from "final judgments, orders and decrees" of the Bankruptcy Court. 28 U.S.C. § 158(a)(1), and (c)(1); Fed. R. Bankr. P. 8003, 8005. The Trustee timely filed an appeal of the Order Denying Objection and Order Denying Reconsideration, which are final orders. *In re Durability, Inc.*, 893 F.2d 264, 265-66 (10th Cir. 1990); *In re Brayshaw*, 912 F.2d 1255, 1256 (10th Cir. 1990). Accordingly, this Court has jurisdiction over the appeal.

## III.   ISSUES ON APPEAL AND STANDARD OF REVIEW

The Trustee raises the following issue on appeal: "Whether the Bankruptcy Court erred by concluding that the Trustee may not utilize Colo. Rev. Stat. § 13-54-106 ('§ 13-54-106') as the basis for objecting to the Debtor's claims of exemptions in certain Debtor assets." Appellant's Br. at 2. Orders denying objections to exemptions are reviewed de novo. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991); *In re Wagers*, 514 F.3d 1021, 1024 (10th Cir. 2007). "De novo review requires an independent determination of

3

the issues." *In re Liehr*, 439 B.R. 179, 182 (10th Cir. BAP 2010) (citing *Salve Regina Coll.*, 499 U.S. at 238).

## IV.   ANALYSIS

### A.   Statutory Framework

When a debtor files for bankruptcy, a bankruptcy estate is created, which "is comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Once a chapter 7 bankruptcy estate is created, the chapter 7 trustee is then responsible for administration of the bankruptcy estate for the benefit of creditors. 11 U.S.C. § 704. The Code, however, allows debtors to "exempt" certain property from the bankruptcy estate under state or federal law. 11 U.S.C. § 522(b). States are permitted to opt-out of the federal exemptions and limit a resident's exemptions to those allowed under state law. *Id*. Colorado has done so, so its debtors claim exemptions only under Colorado state law. Colo. Rev. Stat. § 13-54-107.

A debtor seeking to claim exemptions "shall file a list of property that the debtor claims as exempt" and, "[u]nless a party in interest objects, the property claimed as exempt on such list is exempt." 11 U.S.C. § 522(l). A party objecting to a debtor's claims of exemption bears "the burden of proving that an exemption was not properly claimed." Fed. R. Bankr. P. 4003(c); *In re Lampe,* 331 F.3d 750, 754 (10th Cir. 2003). Property that is "exempt" is removed from the bankruptcy estate. *See* 11. U.S.C. § 522(b)(1); *Owen v. Owen,* 500 U.S. 305, 308 (1991). Such property is further protected by § 522(c), which states in relevant part that "property exempted under this section is not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case[.]" 11 U.S.C. § 522(c). Section 522(c), however, provides for various exceptions

including an exception for DSO debts. 11 U.S.C. § 522(c)(1). In other words, under § 522(c)(1), exempt property remains liable during or after the case for any DSO debt.

Colorado exemptions are primarily set forth in Article 54 of Title 13 of the Colorado Revised Statutes (Article 54). Additionally, § 13-54-106 provides:

> The exemptions provided by [Article 54] shall extend and apply to writs of attachment, execution, and garnishment issued out of any court of record and by municipal courts, except those writs which are the result of a judgment taken for arrearages for child support or for child support debt which are subject to the exemptions set forth in [ ] § 13-54-104(3).

The Tenth Circuit has not addressed if a debtor with a DSO can claim Colorado exemptions pursuant to § 13-54-106. The Colorado Court of Appeals, however, has interpreted this statute in *Drachmeister v. Brassert* and held that § 13-54-106 "clearly permits the garnishment of otherwise exempt property or income for collection of child support arrearages." 93 P.3d 566, 568 (Colo. App. 2004).

In *Drachmeister*, the Colorado Court of Appeals ordered the debtor to make child support payments. Years later, the debtor received a personal injury award. Subsequently, a creditor filed and served two writs of garnishment for child support arrearages seeking the proceeds of the personal injury award. The debtor attempted to stop the garnishment, arguing that the personal injury award was exempt under a Colorado exemption that protects personal injury awards and the trial court disagreed. On appeal, the Colorado Court of Appeals reviewed whether the personal injury award exemption protected the debtor's personal injury judgment from garnishment for his child support obligation and concluded it did not. In doing so, the court analyzed § 13-54-106 and determined that it "limits the application of [Article 54 exemptions]." *Id*. More specifically, the court explained § 13-54-106 was "unambiguous" and "the legislative

intent [wa]s evident from its plain wording, . . . [which] clearly permits the garnishment of otherwise exempt property or income for collection of child support arrearages." *Id*. at 568. Lastly, the court concluded that, based on the plain language of § 13-54-106, "the General Assembly did not intend to limit the personal injury award assets subject to garnishment for child support arrearages." *Id*.

### B.  Whether the Bankruptcy Court erred by overruling the Objection

The Trustee presses four points on appeal: (1) the Bankruptcy Court erred in its interpretation of § 13-54-106; (2) the Bankruptcy Court erred in its reliance and application of § 522(c)(1); (3) the Bankruptcy Court misconstrued the case law relied upon by the Trustee to support his standing argument; and (4) the Bankruptcy Court erred in concluding the Objection was improper because of the administrative costs and equitable considerations.

#### i.  *Whether the Bankruptcy Court erred in its interpretation of § 13-54-106*

In the Order Overruling Objection, the Bankruptcy Court held that § 13-54-106 does not invalidate an exemption to the extent that the debtor owes a DSO—only a DSO creditor is entitled to pursue collection of exempt assets, not the chapter 7 trustee or other creditors. Additionally, in the Order Denying Reconsideration, the Bankruptcy Court reiterated that § 13-54-106:

> does not limit a debtor's right to claim the exemption, nor does property exempted under [Article 54] lose its exempt status with respect to, or even to the extent of, DSO claims. Rather, . . . § 13-54-106 should be interpreted to mean that, notwithstanding its exempt status, personal property exempted under Colorado law remains liable for DSO debts.

The Trustee asserts that the Bankruptcy Court erred because, to the extent a DSO claim exists, there is no exemption available to a debtor under Colorado law in personal

6

property. In support, the Trustee contends that the word "except" is defined as "with the exclusion of" or "excluding"—meaning that § 13-54-106 *excludes* DSO obligors from claiming any Colorado exemptions in relation to a DSO claimant (other than those set forth in an exemption not relevant here). The Trustee contends that, because there is no exemption in personal property that exists for a DSO obligor in relation to a DSO obligee, the personal property was never "exempt in the first instance." Appellant's Br. at 8. The Trustee also relies on the holding in *Drachmeister* that the plain language of § 13-54-106 excludes child support arrearages from Article 54 exemptions, and argues that this pronouncement means that the Colorado Court of Appeals shares his interpretation of § 13-54-106—i.e., if an exemption is excluded it must be eliminated or invalidated.

The "scope and application" of Colorado exemptions are defined by the state courts, and this Court is bound by their interpretations. *Belcher v. Turner*, 579 F.2d 73, 74 (10th Cir. 1978). The Colorado courts, however, have not explicitly addressed whether § 13-54-106 eliminates Article 54 exemptions for those debtors who have a DSO. Under Colorado law, a court interpreting a Colorado statute must "ascertain and give effect to the intent of the legislature," and that task begins with "the language of the statute itself." *People v. Zapotocky*, 869 P.2d 1234, 1238 (Colo. 1994).

Here, the Court determines that the plain language of § 13-54-106, which unambiguously permits the garnishment of otherwise exempt property for collection of child support arrearages, does not eliminate Article 54 exemptions for those with a DSO. The Court also rejects the Trustee's argument that the Assets were never exempt in the first instance because no exemption in personal property exists for a DSO obligor. Section 13-54-106 does not provide that DSO obligors are not entitled to claim any

7

exemptions. Rather, the statute provides that all the Article 54 exemptions extend and apply to collection process, except collection of DSO debts. "When the legislature could have chosen to restrict the application of a statute, but chose not to, the Court need "not read additional restrictions into the statute." *McDonnell v. The Colo. Real Est. Comm'n*, 361 P.3d 1138, 1146 (Colo. App. 2015) (internal quotation omitted).

Further, the pronouncements by the Colorado Court of Appeals in *Drachmeister* do not alter the statutory interpretation analysis. That case supports the interpretation that, under § 13-54-106, otherwise exempt property does not lose its exempt status but is nonetheless available to DSO creditors. *Drachmeister*, 93 P.3d at 568 (§ 13-54-106 "clearly permits the garnishment of *otherwise exempt* property for collection of child support arrearages." (emphasis added)). Thus, the Court interprets § 13-54-106 to protect exempt property from garnishment and create an exception permitting the garnishment of "otherwise exempt property" for collection of DSO debt. Accordingly, the Court finds that the Bankruptcy Court did not err when it held § 13-54-106 does not preclude the Debtor from using Colorado exemptions to protect the Assets.

>   ii. *Whether the Bankruptcy Court erred in its reliance and application of § 522(c)(1)*

The Bankruptcy Court noted "[t]he purpose of discussing § 522(c)(1) was to highlight how other courts have ruled based on language this Court finds is similar to" § 13-54-106 and apply that reasoning to assist in interpreting § 13-54-106. Order Overruling Objection at 3. The Bankruptcy Court then relied on a series of decisions interpreting § 522(c)(1) from sister courts. *See, e.g.*, *In re Fontana*, 2015 Bankr. LEXIS 3771 (Bankr. W.D. N.C. Nov. 4, 2015); *In re Bozeman*, 376 B.R. 813 (Bankr. W.D. Ky. 2007); *In re Duggan*, 2007 Bankr. LEXIS 2750 (Bankr. M.D. Fla. Aug. 15, 2007); *In re*

8

*Waters*, 2007 Bankr. LEXIS 2184 (Bankr. M.D. Ala. June 25, 2007*)*; *In re Vandeventer*, 368 B.R. 50 (Bankr. C.D. Ill. 2007); *In re Quezada*, 368 B.R. 44 (Bankr. S.D. Fla. 2007); *In re Ruppel*, 368 B.R. 42 (Bankr. D. Or. 2007); *In re Covington*, 368 B.R. 38 (Bankr. E.D. Cal. 2006). *See also* Order Denying Reconsideration at 7–9 (summarizing cases). Based on those cases, the Bankruptcy Court determined that § 522(c)(1) does not bar DSO creditors from pursuing exempt assets to satisfy their claims, nor does it limit a debtor's right to claim the exemption. Consequently, the Bankruptcy Court interpreted § 13-54-106 to "narrow the scope of the exemptions, so that property which is exempt from process by other creditors is still liable to and subject to process of DSO claimants." *Id.* at 11.

The Trustee contends that the Bankruptcy Court's reliance on these cases is misplaced because § 522(c)(1) and § 13-54-106 are not similar—"the use of the word 'except' in § 522(c)(1) is very different than the use of the word in C.R.S. § 13-54-106." Appellant's Br. at 16. The Trustee further asserts that, "in C.R.S. § 13-54-106, as held in *Drachmeister*, the word 'except' excludes child support arrearages from article 54 exemptions," whereas the word "except" in § 522(c)(1) refers to the phrase "liable . . . for any debt," not to whether the property is exempt. *Id.*

It is common practice for courts to rely on authority by analogy where there is no authority directly on point. *See, e.g.*, *Bonbeck Parker, LLC v. Travelers Indem. Co. of Am.,* 14 F.4th 1169 (10th Cir. 2021) (using analogous decisions to interpret disputed policy language; noting that such decisions provide a framework for resolving issues when direct precedent is unavailable). And it was not error for the Bankruptcy Court to have done so here because § 522(c)(1) and § 13-54-106 appear to be sufficiently similar.

9

The Court rejects the Trustee's argument to the contrary because, as discussed above, § 13-54-106 similarly protects exempt property from garnishment and creates an exception permitting the garnishment of "otherwise exempt property" for collection of DSO debt. *Drachmeister* supports this interpretation. In other words, exempt property remains liable for DSO debt under § 13-54-106, just like exempt property is not liable for any debt except DSO debt under § 522(c)(1). Accordingly, the Bankruptcy Court did not err in relying on cases interpreting § 522(c) to guide its interpretation of § 13-54-106.

> iii. *Whether the Bankruptcy Court erred by misconstruing the case law upon by the Trustee to support his standing argument*

The Bankruptcy Court ruled that § 544(a)(2) cannot be used to defeat otherwise valid exemptions to reach assets that are not property of the estate. The Bankruptcy Court determined that, although the Trustee may challenge improperly claimed exemptions, Debtor's exemptions were not improperly claimed, and thus, the Trustee did not have standing pursuant to § 544(a)(2) to liquidate Debtor's validly exempted assets.

The Trustee asserts that he had standing to file the Objection and liquidate the Assets, relying on three cases: *Zilkha Energy Co. v. Leighton*, 920 F.2d 1520 (10th Cir. 1990) (explaining a trustee exercising his powers under section § 544(a)(2) as a hypothetical lien creditor may object to an improperly taken exemption); *In re Duffin*, 457 B.R. 820 (10th Cir. BAP 2011); and *In re Murray*, 506 B.R. 129 (10th Cir. BAP 2014).

In *Duffin*, the bankruptcy court considered the debtor's claimed exemption for unmatured life insurance policies. Utah law permits an individual to exempt unmatured life insurance proceeds excluding any payments made on the contract during the one year immediately preceding bankruptcy. The trustee objected to the exemption, which the bankruptcy court overruled, in part, because the bankruptcy court disagreed with the

10

general proposition that § 544(a), in addition to granting avoidance powers, also provides a basis for a trustee to object to exemptions claimed by debtors.

On appeal, the Tenth Circuit BAP reversed. In doing so, the BAP first determined that the powers given to a trustee under § 544(a) are not limited to avoidance of transfers but specifically include broader rights and powers including objecting to exemptions. Applying this broad interpretation of § 544(a)(2), the BAP held that, because the trustee hypothetically stands in the shoes of a judgment lien creditor holding an unsatisfied execution, the trustee could reach the funds excepted from exemption—the premium payments made within one year prior to filing of the petition.

In *Murray*, debtors claimed their earned income credit (EIC) refund as exempt under the Kansas bankruptcy-only exemption protecting the right to receive the federal and state EIC. The trustee objected, arguing because an individual outside of bankruptcy is not given the exemption of the EIC from creditors as is the debtor in bankruptcy, a judgment creditor outside of bankruptcy could gain access to an EIC. The bankruptcy court overruled the objection, concluding that the trustee's strong-arm rights and powers apply to property of the estate but do not extend to specifically exempt property. The BAP affirmed. In doing so, it distinguished *Duffin* noting that, in the instant case, the trustee argued that the § 544(a)(2) powers entitled them to reach exempt assets that are not property of the estate, i.e., the EIC refunds. Whereas, in *Duffin*, the assets at issue were expressly excepted from exemption, and therefore property of the estate. In other words, *Duffin* permitted the use of § 544(a)(2) to defeat an improperly claimed exemption. The BAP emphasized that allowing the trustee to use § 544(a)(2) to defeat debtors' properly claimed exemptions of their EIC refunds would mean that those "strong-arm

11

powers could be used to defeat any exemption, whether improperly or properly claimed by a debtor, including homestead, motor vehicle, and tools of the trade exemptions." *Murray*, 506 B.R. at 139.

The Trustee contends that the facts in this appeal are like the facts in *Duffin*. Utah state law excepts from exemption life insurance premiums paid in the year prior to the petition date, just like "Colorado state law excepts personal property from its exemption scheme for the claims of DSO claimants." Appellant's Br. at 13. The Trustee asserts that he invoked "§ 544(a)(2) to defeat an improperly claimed exemption" (like in *Duffin*) not "to reach exempt assets that are not property of the estate" (like in *Murray*). *Id.*

The synthesis of authorities in the Tenth Circuit suggests that the powers given to a trustee under § 544(a) are not limited to avoidance of transfers but specifically include broader "rights and powers," including the ability to object to exemptions. *Zilkha*, 920 F.2d at 1523; *In re Duffin*, 457 at 828 ("[T]he Tenth Circuit has rejected a narrow interpretation of § 544(a)[.]"). Moreover, it is clear a trustee can invoke § 544(a)(2) to defeat "an improperly claimed exemption" but not "to reach exempt assets that are not property of the estate." *In re Duffin, 457 at 828; Murray*, 506 B.R. at 138-39.

That said, the Court rejects the Trustee's argument that he is invoking § 544(a)(2) to defeat an improperly claimed exemption (like in *Duffin*) because, as discussed above, Debtor has properly claimed exemptions in the Assets, which means that they are not property of the estate. Accordingly, the Trustee could not administer the Assets pursuant to § 544(a), and the Bankruptcy Court did not err in its interpretation of the cases the Trustee relied on.

> *iv. Whether the Bankruptcy Court erred in concluding that the Objection is improper because of the administrative costs and other equitable considerations*

The Bankruptcy Court determined that, because the amount of the DSO exceeds the value of the Assets, the administration of the Assets would be for the benefit of only a single creditor—the DSO creditor—rather than unsecured creditors. The Bankruptcy Court therefore concluded that it would be "improper" (as it would be where a chapter 7 trustee seeks to liquidate fully-encumbered property for the benefit of a single secured creditor) to permit the Trustee to liquidate the Assets where the sole benefit to the estate would be the recoupment of administrative costs.

The Trustee contends that the Bankruptcy Court's analogy to a trustee's efforts to liquidate fully-encumbered property for the benefit of a secured creditor is misplaced because (1) the Trustee's Handbook provides that a trustee "must" object to an exemption "if doing so benefits the estate;" (2) the Handbook does not prohibit the sale of fully-encumbered property, but rather provides guidelines for when such sales may be appropriate; and (3) the Code expressly contemplates the administration of assets solely for the benefit of priority creditors. Appellant's Br. at 20. The Trustee further asserts the Bankruptcy Court's conclusion that administrative costs would be unfair to the DSO creditor was done with no evidentiary support especially since all chapter 7 asset administration involves accrual of administrative expenses and thus would not be a sufficient basis to preclude potential recovery.

The Handbook supplements the guidance to trustees in §§ 704 and 554. It is a valuable resource because it is prepared by the Executive Office of the U.S. Trustee Program, which was created "to promote the integrity and efficiency of the bankruptcy

13

system for the benefit of all stakeholders." *In re Bird*, 577 B.R. 365, 376 (10th Cir. BAP 2017) (internal quotations omitted). The Handbook provides that a "trustee must object to a claimed exemption if doing so benefits the estate." Handbook at 4-4. The Handbook also provides that "a trustee may sell assets only if the sale will result in a meaningful distribution to creditors or provides some other significant benefit." *Id.* at 4-14. Finally, the Handbook notes that "[a] trustee shall not administer an estate or an asset in an estate where the proceeds of liquidation will primarily benefit the trustee or the professionals[.]" *Id.* at 4-1.

The Trustee is not incorrect that (i) pursuant to the Handbook a trustee is duty bound to object to a claimed exemption if doing so benefits the estate, (ii) the Handbook does not expressly prohibit the sale of fully-encumbered property, and (iii) the Code permits a trustee to avoid certain penalty-based liens to pay priority claimants, including the holders of DSO claims. That said, the Trustee fails to address whether there is a true benefit to the estate under the facts here and that courts have "universally recognized, [ ] that the sale of a fully encumbered asset is generally prohibited." *In re Bird*, 577 B.R. at 376 (quoting *In re KVN Corp., Inc.*, 514 B.R. 1, 5 (9th Cir. BAP 2016)).

The Court concludes that the Bankruptcy Court did not err in determining that allowing the Trustee to administer the Assets would run afoul of the Handbook's directive prohibiting trustees from administering an asset where the proceeds of liquidating will primarily benefit the trustees. Further, the record supports the Bankruptcy Court's findings that (i) the amount of the DSO exceeds the value of the Assets, (ii) if the Objection is sustained and the Assets liquidated, the DSO claimant will receive all proceeds net of the Trustee's case administration expenses, and (iii) the DSO claimant would receive neither

the full amount of her claim nor the full value of the Assets if the Trustee liquidated the Assets. *Compare Official Form 106* at 1, *with Official Form 106E/F* at 13. *See* Trustee's Motion for Reconsideration at 4, *in* Appellant's App. at 94 (the Trustee represents to the Bankruptcy Court that "if the Objection is sustained and the assets liquidated, the DSO claimant will receive all proceeds net of the Trustee's case administration expenses"); Order Denying Reconsideration at 2 ("Based on simple math, the DSO creditor would receive neither the amount of her claim nor the full value of the Assets if the Trustee liquidated the Assets.").

Moreover, the Bankruptcy Court's discussion of administrative costs and other equitable considerations is not essential to its determination to overrule the Objection. Even if the Bankruptcy Court did err in concluding the Objection was improper based on equitable considerations, any such error would be harmless since § 13-54-106 does not eliminate Article 54 exemptions for those debtors with a DSO debt.

## V.   CONCLUSION

For the foregoing reasons, the Court concludes that the Bankruptcy Court did not err in its interpretation of Colo. Rev. Stat. § 13-54-106 and subsequent legal conclusions. Accordingly, the Court AFFIRMS the Bankruptcy Court.

Dated this 27th day of March 2025.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge